# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

Crystal Coates,                          )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )    Case No. 2:08-CV-04158-NKL
                                         )
Derrick Powell, et al.,                  )
                                         )
          Defendants.                    )

# ORDER

Plaintiff Crystal Coates ("Coates") brings this lawsuit based upon events that occurred in the course of a child neglect investigation. She names the following Defendants: Derrick Powell ("Powell"), in his individual capacity and official capacity as a trooper with the Missouri State Highway Patrol; Jeff Glandon ("Glandon"), in his individual capacity and his official capacity as an officer with the police department of the City of New Franklin, Missouri; James Keathley ("Keathley"), in his official capacity as Superintendent of the Missouri State Highway Patrol; and the City of New Franklin, Missouri.[1]

Before the Court are Powell's motion for summary judgment [Doc. # 40], Glandon's motion for summary judgment [Doc. # 44], and Coates's motion for partial summary judgment [Doc. # 57]. For the following reasons, the Court grants in part and denies in part

---

[1] Coates originally named the following Defendants as well: Board of Aldermen of New Franklin, Missouri ("Board"); Tiffany Clevenger ("Clevenger"), in her individual capacity and official capacity as a social worker with the Children's Division of the Missouri Department of Human Services; and Deborah E. Scott ("Scott"), in her official capacity as the Director of the Missouri Department of Social Services. Plaintiff voluntarily dismissed the Board, and the Court granted Clevenger and Scott's motion to dismiss, ordering Coates to pay costs.

Powell's motion, grants Glandon's motion, and Coates's motion is denied.

## I. Factual Background

The following facts are taken from the parties' supported statements of uncontroverted facts. In June 2006, Clevenger was a Children's Social Worker with the Children's Division of the Missouri Department of Social Services. On June 5, 2006 at about 5 P.M., Clevenger was addressing a hotline call that had been received the preceding evening concerning children being left unattended; the call was determined to merit an "investigation" because there was a possibility that it could have resulted in criminal charges.

Section 210.145.4 of the Missouri Revised Statutes states that the Children's Division of the Missouri Department of Social Services:

> shall contact the appropriate law enforcement agency immediately upon receipt of a report which [Children's Division] personnel determine merits an investigation and provide such agency with a detailed description of the report received. In such cases the local division office shall request the assistance of the local law enforcement agency in all aspects of the investigation of the complaint.

Mo. Rev. Stat. § 210.145.4. That statute also provides that "[t]he appropriate law enforcement agency shall . . . assist the division in the investigation." *Id.* Section 210.145.7 provides:

> The investigation shall include but not be limited to the nature, extent, and cause of the abuse or neglect; the identity and age of the person responsible for the abuse or neglect; the names and conditions of other children in the home, if any; the home environment and the relationship of the subject child to the parents or other persons responsible for the child's case; any indication of incidents of physical violence against any other household or family member; and other pertinent data.

Mo. Rev. Stat. § 210.145.7. Section 210.145.5 provides:

2

> If the report indicates the child is in danger of serious physical harm or threat to life, an investigation shall include direct observation of the subject child within twenty-four hours of the receipt of the report. Local law enforcement shall take all necessary steps to facilitate such observation.

Mo Rev. Stat. § 210.145.5.

On June 6, 2006, Clevenger requested that Glandon accompany her to investigate the hotline call. Clevenger testified that the investigation had to be conducted, and the children had to be seen, within twenty-four hours of the hotline call. Powell apparently volunteered to assist Glandon and Clevenger in the investigation.

The three proceeded to Coates's house, which was identified in the hotline call. They had no warrant to enter the Coates house and Powell testified that he believed it was unlikely that children were in the house at the time  In fact, before arriving at the house, the officers and Clevenger had made a plan to see the children at their school.

At approximately 10:00 a.m., Clevenger and the officers arrived at Coates's house. Coates's boyfriend, Bobby Jones ("Jones"), was at the house and gave Clevenger, Powell, and Glandon consent to enter the house. Coates was sleeping in the house when they arrived, having worked the previous night. After she appeared, a conversation ensued in which Coates became upset.  Powell and Glandon told Coates and Jones to calm down and Powell told Clevenger to "get them the ---- out of my house, if you want to talk to me."  At some point, Coates attempted to rise off the couch where she was seated and Powell touched her, forcing her back onto the couch.  This happened at least twice.  Coates expressed displeasure at the touching – cursing and stating that Powell could not treat her that way in her house.

3

All the parties agree Coates was agitated and verbally abusive.

After Coates told Powell and Glandon to "get the ---- out of my house", they told her that they needed to do the investigation. and did not leave immediately. They remained in the house for fifteen minutes after being told to leave. At that point Glandon did not believe there was probable cause to make an arrest of Coates. After some time, Clevenger 'requested, Powell and Glandon to leave the house and they did. Glandon never touched Coates inside her house.

Subsequently, with the officers still present outside, Coates left her house to pick up her daughter from school and was gone for several minutes. When she returned, Powell stopped Coates outside her house and asked for her license, intending to cite her for traffic violations (improperly displaying a license plate and not wearing a seatbelt). Coates refused to sign the citations Powell wrote, as she believed this would be an admission of guilt, and told him to "haul her in." At some point, she reached out her hand and Powell grabbed it. To handcuff Coates, Powell used a technique called the "CLAMP maneuver" to subdue Coates. (The CLAMP maneuver is a method of handcuffing an arrestee which involves twisting the arrestee's arm.) Coates's arm was broken in the process. Coates does not believe that Powell intended to break her arm. Powell called for medical assistance once Coates was handcuffed. Powell's application of the CLAMP maneuver took only a couple of seconds, too quickly for Glandon to have stopped it. Coates subsequently pleaded guilty to the traffic violations.

4

## A. Complaint

It appears from Coates's Complaint that she attempted to assert all claims in the Complaint against all Defendants. Count I alleges claims under 42 U.S.C. § 1983 for violation of Coates's Fourth Amendment constitutional right to be free from unreasonable seizures and excessive force, as well as Fifth and Fourteenth Amendment rights to liberty and due process. Count II alleges a state law trespass claim based on failure to leave her house when asked to do so. Counts III and IV allege state law assault and battery claims based on Powell touching Coates inside her residence and subsequently breaking her arm. Count V alleges a state law intentional/negligent infliction of emotional distress claim based on Powell breaking her arm.

Though Coates's § 1983 theory of recovery is not entirely clear, she appears to assert her constitutional claims based on three alleged circumstances: (1) Powell restraining Coates on the couch; (2) Powell and Glandon remaining in the house after Coates told them to leave; (3) Powell arresting Coates and breaking her arm. She argues that the restraint on the couch was an unlawful arrest (with regard to Powell's motion for summary judgment) or seizure (with regard to Glandon and her own motion for summary judgment) and constituted the use of excessive force. She indicates that the officers remaining in her house constituted a trespass and violation of her Fourth Amendment right to be free from unlawful search. Finally, she claims that the arrest and breaking of her arm involved the excessive use of force.

5

## II. Discussion[2]

### A. City of New Franklin and Glandon's Joint Motion for Summary Judgment

The City of New Franklin and Glandon move for summary judgment on all claims against them.

#### 1. Claims against City of New Franklin and Official Capacity Claims against Glandon

Coates provides no evidence of the requisite policy or custom necessary to proceed on her claims against City of New Franklin and Glandon in his official capacity. She concedes that summary judgment should be granted on those claims. *See generally Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). The Court grants summary judgment in favor of the City of New Franklin and officer Glandon in his official capacity.

#### 2. Individual Capacity Claims against Glandon

Glandon argues that he is entitled to qualified immunity on Coates's constitutional claims against him in his individual capacity. Coates states that she is claiming that Glandon is liable for: (1) illegal search and seizure in violation of the Fourth Amendment (based on his remaining in her house after she told him to leave), as well as (2) trespass (based on the

---

[2] Before ruling on this motion, the Court considered the issues, arguments and authorities raised both in the briefs and at oral argument. Although Coates did not clarify her arguments concerning her claims until briefing at summary judgment, all parties had full opportunity to address those claims through response and reply briefs, as well as at oral argument where the Court gave the parties additional opportunity to address arguments and issues.

6

same); (3) unreasonable seizure in violation of the Fourth Amendment (based on his failing to stop Powell's restraint of Coates on the couch); (3) excessive force (based on Glandon failing to stop Powell's restraint of Coates on the couch and his failing to intervene prior to Powell breaking Coates's arm); (4) assault and battery; and (5) intentional/negligent infliction of emotional distress.

### a. Qualified Immunity Generally

"Qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were nevertheless objectively reasonable in light of the clearly established law at the time of the events in question." *Turpin v. County of Rock*, 262 F.3d 779, 783 (8th Cir. 2001) (citation and internal punctuation omitted). Thus, "a state official is protected by qualified immunity from a section 1983 claim unless [the] alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in his position would have known." *Missouri Protection & Advocacy Servs. v. Missouri Dep't of Mental Health*, 447 F.3d 1021, 1025 (8th Cir. 2006) (citation and internal punctuation omitted). "The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008).

Qualified immunity requires a two-part analysis at summary judgment. The Court must consider whether a constitutional violation has occurred and also consider whether that right was clearly established at the time of the violation. *Moore v. Indehar*, 514 F.3d 756,

764 (8th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Supreme Court of the United States recently clarified that lower courts need not consider these two questions in order, and may turn first to the question of whether the allegedly violated right was clearly-established. *See Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009). As to the first issue, "[a]lthough qualified immunity is an affirmative defense, the burden is on the plaintiff to plead and, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore*, 514 F.3d at 764 (emphasis original and citations omitted) (noting that a plaintiff in a Fourth Amendment Section 1983 excessive force case must establish both that a seizure occurred and that it was unreasonable).

Where a plaintiff meets this burden, the question becomes whether those rights were clearly established. In considering this question, a defendant's actual knowledge is irrelevant; instead, courts must consider, objectively, whether a reasonable police officer in the defendant's position would have understood that what he or she was doing violated a clearly established right. *See O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007). "[W]hen one faces an unsettled legal issue, determining a governing legal standard can be quite hairy; it mires one in conflicting cases, each presented by reasonable jurists interpreting the applicable rule of law." *Missouri Protection & Advocacy Servs. v. Missouri Dep't of Mental Health*, 447 F. 3d 1021, 1025-26 (8th Cir. 2006) (holding state officials protected by qualified immunity where there were divergent opinions between the New Hampshire Supreme Court and the Third Circuit regarding interpretation of a statute).

8

### b. Illegal Search & Seizure (Remaining in the House)

### (1) Constitutional Violation

Coates argues that Glandon committed an illegal search and seizure by remaining in her house after being told to leave. First, the Court concludes that entering a house or remaining in a house for the purpose of gathering information is a search and the Fourth Amendment provides that citizens should be free from unreasonable searches and seizures. *See United States v. Lopez*, 564 F.3d 1001 (8th Cir. 2009). Second, the Court concludes that Glandon did violate the Fourth Amendment under these circumstances when he refused to leave. Third, the Court finds that Glandon is entitled to qualified immunity because it was not clearly established at the time of this incident that an officer was required to leave a private home in the middle of a child neglect investigation.

In *Georgia v. Randolph*, 547 U.S. 103 (2006),the Supreme Court held that a police officer did not have consent to enter a home even when a co-tenant gives consent, if another co-tenant is standing at the door refusing entry to the police. 547 US 103 at 113. Likewise, under Eighth Circuit law, an officer who enters with consent of a landowner must leave when that consent is revoked. *See United States v. Parker*, 412 F.3d 1000, 1002 (8th Cir. 2005) (indicating that a homeowner may revoke consent to be in the home by unequivocal acts or statements). Considering the reasoning in *Georgia v. Randolph,* it is clear that a co-tenant has the right to revoke the consent given to police by a co-tenant. Therefore, when Coates told the police officers to leave they were required to leave unless there was an independent basis for them remaining.

In *Georgia v. Randolph*, the Supreme Court in dicta suggested one basis for remaining in a home after a co-tenant has denied or revoked consent. They clarified that no question could be reasonably raised

> about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to . . . determine whether violence (or threat of violence) . . . soon will . . . occur, however much a [resident] objected. . . . Thus, the question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes.

*Id.* at 118-19,

Thus the question here is whether the police could reasonably believe that there was a threat of violence that would soon occur at the Coates house that required them to remain. Or, by analogy, was there a threat to the Coates children that would soon occur that required their continued presence. *See, e.g., U.S. v. Antwine*, 873 F.2d 1144, 1148 (8th Cir. 1989) (finding that exigent circumstances justified a warrantless entry into a home to protect children from the threat of the presence of a loaded gun).

The undisputed facts indicate that there were no such circumstances confronting Officer Glandon. While there is evidence of a hotline call, the only descriptions of the hotline call indicate that it was a report of children playing outside unattended. Though the Children's Division determined that the call warranted an investigation, there was no urgency in the conduct of that investigation: the call came in the evening, and Clevenger and the officers did not proceed to Coates's house until approximately 10:00 a.m. the following day. *See generally Gates v. Texas Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 422-23, 427

10

(5th Cir. 2008) (finding no exigent circumstances for officers and social workers remaining in a home on a child abuse investigation after the owner revoked consent where, *inter alia*, they had gone to lunch before proceeding to the home). The parties agree that, at the time Coates revoked consent, the officers knew that the children were not in the home. *See id.* (noting that, where the alleged abuser was absent, there was no immediate danger to the children). The officers apparently did not believe Coates herself to be a danger to the children, as the officers allowed her to leave the house to pick up one of her children from school. The defendants do not argue that Coates's agitation alone created exigent circumstances independently allowing the officers to remain in the house. Consequently, the undisputed facts demonstrate that there were no exigent circumstances allowing the officers to remain in the house after Coates ordered them to leave. *See generally id.* at 424, 427 (finding no exigent circumstances justifying remaining in the house and clarifying that the "special needs" doctrine does not allow warrantless searches where law enforcement investigates child abuse).

There were other avenues by which the officers could have proceeded with their duty to investigate and to protect the children. They could have investigated outside the house – for example, by interviewing the children at school; indeed, there is evidence that they intended to do so. They could have attempted to obtain a warrant. They did not. The officers raise no argument that they left Coates's house within a reasonable time of being ordered to leave: there is evidence that they did not leave for more than ten minutes after consent was revoked, and only upon Clevenger's request. They were in violation of the

Fourth Amendment when they remained in the house for an unreasonable time after consent was revoked.

### (2) Clearly Established Constitutional Right

The question then becomes whether Coates's right to have the officers leave her house during the course of a child neglect investigation was clearly established at the time. For a constitutional right to be clearly established,

> the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Omni Behavioral Health v. Miller*, 285 F.3d 646, 653 (8th Cir. 2002) (citation and internal punctuation omitted).

In *Omni*, the Eighth Circuit considered a § 1983 action brought by a provider of foster care services arising from a police detective's investigation of allegations of abuse which allegedly resulted in closing of the facility. On the issue of qualified immunity, the Eighth Circuit found no authority for the proposition that a reasonable officer would have known he was violating the provider's constitutional rights in conducting the child abuse investigation. Instead, the *Omni* court noted that "the vast majority of cases that are at all analogous tend to conclude that a clearly established violation of a constitutional right does not occur when a fundamental right is balanced against a child abuse investigation." *Id.* at 654 (citing *Callahan v. Lancaster-Lebanon Intermediate Unit 13*, 880 F. Supp. 319, 330-31 (E.D. Pa.1994). In *Omni*, there had been several corroborated reports of child abuse; an

12

experienced child protection services worker testified that the officer's investigation was in line with standard investigative protocol. *Id.* at 653. The *Omni* court noted that, if the detective had not pursued the investigation, he would have been in violation of established standards. *Id.* at 655. "It is precisely this type of damned if you do, damned if you don't, discretionary decision-making on the part of government officials that the doctrine of qualified immunity was meant to protect." *Id.* (citation and internal punctuation omitted) (concluding that, under the circumstances presented, the detective's investigation was objectively reasonable and, thus, qualified immunity applied).

Applying qualified immunity analysis to the instant case, the question becomes whether Glandon violated a clearly established constitutional right of which a reasonable officer would have known. When he was in Coates's house, Glandon knew that there had been a hotline call alleging neglect and that the Children's Division had ordered an investigation. He knew that Coates was agitated. He also knew that he had a statutory duty to assist with Clevenger's investigation.

Although that state statutory duty does not trump an officer's duty to uphold the Constitution, at the time of the events at issue, a reasonable police officer could have believed Glandon's actions constitutional. One unschooled in the nuance of the law could read *Georgia* as indicating that officers were allowed to remain in a home to complete a child neglect investigation. Or a reasonable officer could have thought that there was a special needs exception for all child neglect and abuse investigations. *Gates v. Texas Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 422-23, 427 (5th Cir. 2008) (Granting qualified

13

immunity to officers who remained in home after consent was revoked in order to complete a child abuse complaint). The Court finds that Glandon is entitled to qualified immunity on Coates's claim that he remained in Coates's home in violation of the Fourth Amendment.

### c.    Illegal Seizure & Excessive Force (Restraint on Couch)

Coates argues that Powell subjected her to an unreasonable seizure and excessive force by restraining her on her couch and that Glandon is liable for failing to stop Powell from doing so.  A seizure occurs when a reasonable person would believe that they are not free to leave.  *Michigan v. Chesternut*, 486 U.S. 567 (1988).

"An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under" § 1983.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008). The duty of one officer to intervene arises when the officer witnesses a violation of a constitutional right by another law enforcement officer and fails to act despite opportunity to do so.  *See Putnam v. Gerloff*, 639 F.3d 415, 424 (8th Cir. 1981).  As one court recently explained:

> A defendant can be liable for failure to intervene under two different theories. *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 51-52 (1st Cir. 2005). The first theory posits whether the officer was "indeed present at [Plaintiff's] arrest with an opportunity to prevent the excessive use of force." *Fogarty*, 523 F.3d at 1163. Alternatively, an officer can be liable where they are "instrumental in assisting the actual attacker or aggressor to place the victim in a vulnerable position." *Torres-Rivera*, 406 F.3d at 52.  However, it is important to note that the officer must have a " 'realistic opportunity' to prevent the attack." *Id.* (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203 (1st Cir.1990)).

*Rohrbough v. Hall*, No. 4:07CV00996 ERW, 2008 WL 4722742 (E.D. Mo. 2008).  Thus, to prevail on her "failure to intervene" claim at trial, Coates must eventually show that Glandon

14

either had an opportunity to intervene or was instrumental in any seizure or use of excessive force.

Glandon argues that he is entitled to summary judgment on this claim. The facts give no indication that Glandon touched Coates inside her house or was instrumental in her being restrained. Glandon states that, even if the restraint was unlawful, the facts do not support a finding that he had a realistic opportunity to intervene. Though Coates generally states that "there is at least a question of fact" as to whether Glandon had such an opportunity, she points to no fact or argument indicating that such an opportunity existed. If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). Coates cannot meet her burden on the failure to intervene claim regarding the restraint on the couch. Glandon is entitled to summary judgment on this claim.

### d. Excessive Force (Arrest)

Coates alleges that Glandon is liable for the use of excessive force because he failed to intervene in the altercation between Powell and Coates prior to the time her arm was broken by Powell's use of the CLAMP maneuver. Coates testified that her arm broke too quickly for Glandon to intervene and Powell confirmed this; it is clear that Glandon did not have an opportunity to intervene in Powell's application of the CLAMP maneuver. Nevertheless, Coates argues that Glandon's failure to intervene in the escalating interaction

15

between Coates and Powell renders him liable. She states that Powell never would have had an opportunity to break her arm if Glandon had intervened.

Again, the duty to intervene arises upon an officer's witnessing a constitutional violation. Coates has pointed to no facts indicating that Glandon witnessed any constitutional violation in which he had an opportunity to intervene. The facts and Coates's argument clarify that any violation arising out of Powell restraining her on her couch was complete once the officers left the house: Coates left the premises after that point, and makes no argument that she believed herself to be under continual restraint up until the time Powell arrested her. "It is axiomatic that an officer cannot intervene to stop abusive conduct after the conduct has already occurred." *Jacobson v. Mott*, No. 07-4420 (DWF/RLE), 2009 WL 113379, at *3 (D. Minn. Jan. 16, 2009).

Coates offers no argument or evidence that there was any constitutional violation occurring after the restraint on the couch until the moment Powell applied the CLAMP maneuver. Coates left the couch and the house, driving away in her car. Escalating tension between and officer and a suspect alone does not give rise to a duty to intervene. Coates makes no argument that the arrest itself – as opposed to the means used for executing the arrest – was unlawful. Despite Glandon's summary judgment challenge, Coates does not indicate any constitutional violation which would have triggered Glandon's duty to intervene prior to Powell's application of the CLAMP procedure. Glandon is entitled to summary judgment on Coates's claim that he failed to intervene prior to that time.

> **e.** **State Law Claims (Trespass, Assault & Battery,**

**Intentional/Negligent Infliction of Emotional Distress)**

Glandon states that he is immune from Coates's state law claims under the doctrine of official immunity. Missouri law recognizes the doctrine of official immunity. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008); *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). This doctrine "protects public employees from liability for alleged acts . . . committed during the course of their official duties for the performance of discretionary [but not ministerial] acts." *Davis*, 193 S.W.3d at 763 (citing *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. banc 1985), overruled on other grounds by *Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988)). The doctrine "insulates state employees from suit in their individual capacities" when liability arises out of discretionary act. *Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002). A "discretionary" function is one requiring an official's exercise of judgment, while a "ministerial" function is a task "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Kanagawa*, 685 S.W.2d at 836 (internal quotation and citation omitted). Official immunity applies to discretionary acts absent malice or bad faith. *See* S*chmidt v. City of Bella Villa*, 557 F.3d 564, 575 (8th Cir. 2009).

In response to Glandon's argument that he is shielded by official immunity, Coates raises a single argument. She seems to argue that official immunity does not apply because she sues him in his individual capacity. However, official immunity applies to individual

Case 2:08-cv-04158-NKL   Document 80   Filed 07/01/09   Page 17 of 28

capacity claims. *See Betts-Lucas*, 87 S.W.3d at 327. Therefore, the only question is whether Glandon is entitled to official immunity on the undisputed facts.

Official immunity applies to discretionary actions taken by law enforcement officers in the course of their duties. *See Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (applying official immunity to shield a police officer from a state wrongful death suit based on an alleged excessive-force shooting). Here, there is no dispute that Glandon and Powell were executing their statutory duty to assist Clevenger in the investigation of the hotline call; that investigation must include: "the nature, extent, and cause of the abuse or neglect; the identity and age of the person responsible for the abuse or neglect; the names and conditions of other children in the home, if any; the home environment and the relationship of the subject child to the parents or other persons responsible for the child's care; any indication of incidents of physical violence against any other household or family member; and other pertinent data." Mo. Rev. Stat. § 210.145.7. Executing this duty necessarily requires police officers to exercise their discretion. *See Seiner*, 304 F.3d at 813 (noting that officers are performing discretionary acts when they execute warrants, and draw and fire weapons). Coates does not argue or offer evidence showing that Glandon acted with malice or bad faith. He is entitled to summary judgment on Coates's state law claim for trespass, assault and battery, and negligent infliction of emotional distress.

However, because a claim for intentional infliction of emotional distress may implicate a component of malice of bad faith, official immunity would not extend to Coates's claim for intentional infliction of emotional distress. Nonetheless, as Glandon argues, even

18

drawing every inference in favor of Coates, there is no evidence that Glandon intended to cause her emotional distress. Accordingly, Glandon is entitled to summary judgment on Coates's claim for intentional infliction of emotional distress as well.

### B.     Powell's Motion for Partial Summary Judgment

Powell moves for summary judgment on Coates's claims for illegal arrest, trespass, remaining in the house, and intentional infliction of emotional distress. Powell concedes that a "jury will have to determine whether his use of force was excessive and unreasonable."

### 1.     Illegal Arrest (Restraint on Couch)

In response to Powell's motion for summary judgment, Coates clarifies that she only raises her claim for illegal "arrest" based on Powell's restraint of her on the couch (as opposed to the arrest he made based on the traffic violations). She argues that there was no warrant for her arrest, and no probable cause to believe a crime had been committed. Her argument indicates her belief that Powell's restraining her on the couch amounted to an arrest.

Powell raises two points in response to Coates's argument. First, Powell argues that Coates did not make this claim in her Complaint. However, the Court finds that the Complaint adequately alleges a scenario which would give rise to such a theory of Coates's case. Though Coates's Complaint is somewhat vague, alleging general constitutional violations, Powell did not move to dismiss Coates's Complaint or for a more definite statement, and he had the opportunity to explore the contours of her claims during discovery. The Court will not grant summary judgment on Coates's illegal arrest claim solely on the basis that Powell did not believe that she intended to pursue the claim based on his conduct

inside her house.

Second, Powell disputes Coates's claim that his conduct inside her house amounted to an "arrest." An arrest occurs by "actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority or otherwise." *See* Mo. Rev. Stat. § 544.180; *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (stating that the slightest use of physical force may effect an arrest). Powell admits that he touched Coates and that she returned to the couch several times. This may have amounted to an arrest as defined by the law. The fact that Coates continued to rise off the couch and shortly left her house after being touched by Powell does not negate the possibility that an arrest occurred. *See id.* at 625. Just because a person is released does not mean they have not been arrested.

Though Powell may be attempting to argue that his restraint of Coates was justified, he provides no legal argument or application of the law to the facts of this case which would allow the Court to reach such a conclusion at summary judgment. Powell does not argue that he is entitled to qualified immunity for his restraint of Coates on the couch. Powell has not demonstrated that he is entitled to summary judgment on Coates's wrongful arrest claim.

### 2.    Illegal Search & Seizure (Remaining in the House)

In his reply brief, Powell includes a very short argument concerning qualified immunity on Coates's Fourth Amendment claim for remaining in the house after being told to leave. Though Coates did not have or seek an opportunity to respond to this argument by Powell in writing, she did have such an opportunity to brief the issue generally on Glandon's motion and, specifically as to Powell, at oral argument. As discussed above, though the

officers violated Coates's Fourth Amendment rights by remaining in her house after she revoked consent, at the time, a reasonable officer could have thought doing so was not in violation of Coates's rights. Coates gives no indication that – as to remaining in the house – the analysis of qualified immunity should be different for Powell than it is for Glandon. The Court finds that Powell is entitled to qualified immunity on this claim.

### 3. State Law Claims (Trespass & Intentional/Negligent Infliction of Emotional Distress)

#### a. Official Immunity

Powell argues that he is entitled to official immunity on Coates's state law tort claims. For the reasons stated above in the discussion of Glandon's motion for summary judgment, the Court agrees as to Coates's trespass and negligent infliction of emotional distress claims. Again, because a claim for intentional infliction of emotional distress may implicate a component of malice of bad faith, official immunity would not extend to Coates's claim for intentional infliction.

#### b. Intentional Infliction of Emotional Distress

Powell argues that Coates cannot succeed on her claim for intentional infliction of emotional distress. As a threshold issue, Powell argues that she should be barred from proceeding on this claim based on conduct beyond his alleged breaking of her arm.

In her response to Powell's motion, Coates argues that Powell is liable for infliction of emotional distress based on his repeatedly insulting, assaulting, and "seizing" her and also by conspiring against her. Further, Coates states there are fact questions regarding whether

Powell made the hotline call and volunteered to ride along on the investigation for purposes of causing her emotional distress, though she introduces no evidence to support those allegations.

Unlike her other claims, Coates's Complaint states a specific basis for her intentional/negligent infliction of emotional distress: "Defendants intentionally caused harmful and offensive touching to Plaintiff Crystal Coates by wrenching her arm behind her back without adequate provocation which was offensive to her and such contact would be offensive to a reasonable person." [Doc. # 1 at ¶ 83.] Thus, Coates pleaded that her claim for intentional infliction of emotional distress arises only from the breaking of her arm. It would be unduly prejudicial to allow Coates to expand her claim beyond the articulated boundaries in her Complaint at this stage of the litigation. Coates's claim for intentional infliction of emotional distress is limited to Powell's breaking of her arm.

With regard to the merits of Coates's claim for intentional infliction of emotional distress based on her broken arm, Powell argues that Coates cannot establish the elements of her claim. Missouri courts have clarified that conduct constituting intentional infliction of emotional distress must be horrible:

> Intentional infliction of emotional distress requires the defendant to act intentionally or recklessly, the conduct must be extreme and outrageous, and the conduct must be the cause of extreme emotional distress that results in bodily harm. *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 446 (Mo. App. [Ct.] 2000). Wrongful conduct alone cannot serve as a basis for the tort, but instead, the conduct must have been so outrageous and extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997). In addition, it is essential that the conduct be intended only to cause emotional distress to the victim.

*Id.*

*Conway v. St. Louis County*, 254 S.W.3d 159, 166 (Mo. App. Ct. 2008).

Questions of fact remain concerning whether Powell acted with the intent to cause extreme emotional distress and whether his behavior was "atrocious." Powell concedes that whether he used excessive force is a question of fact. It is true that Coates cannot show that Powell acted with the intent *to break her arm*: Coates testified that she does not believe Powell intended to do so. [Doc. # 41 at 10 (citing Coates's deposition: "I think that the only reason my arm really broke was because of the angle that we were at and the pressure that was being put on my arm is the whole reason why it really broke. I honestly don't think he intended on breaking my arm, I really don't.").] However, drawing all inferences in favor of Coates, Powell's conduct inside Coates's house, his conduct after she returned and certain alleged statements by Powell may indicate that he was acting with intent *to cause her extreme emotional distress* when he applied the CLAMP maneuver. Powell's motion for summary judgment must be denied on this claim.

### C.    Coates's Motion for Partial Summary Judgment

Coates moves for partial summary judgment on her claims for: (1) trespass; (2) violation of her Fourth Amendment right to be free from unreasonable searches and seizures (based on Powell and Glandon remaining in her house over her objection); (3) Keathley in his official capacity as Superintendent of the Missouri State Highway Patrol (based on the same); and (4) illegal arrest in violation of her Fourth Amendment rights (based on being restrained on her couch). Only Powell filed a response to Plaintiff's motion.

23

### 1. Trespass

As discussed above, Coates cannot establish liability for trespass. Glandon and Powell are entitled to official immunity on these claims. Coates offers no argument or evidence which would extend liability for trespass to Keathley. She is not entitled to summary judgment on this claim.

### 2. Fourth Amendment Search and Seizure

Coates moves for summary judgment on her claim that Powell and Glandon performed an illegal search/seizure by remaining in her house after she revoked consent. She argues that they had no warrant, and there were no exigent circumstances permitting them to remain in her house.

However, as discussed above, both officers are entitled to qualified immunity on this claim. Consequently, Coates is not entitled to summary judgment on her claim that the officers violated her Fourth Amendment rights by remaining in her house.

### a. Keathley in his Official Capacity

Coates argues that there is no question of material fact concerning whether the Missouri State Highway Patrol had a policy or practice of training officers to violate the constitutional rights of citizens. The policy or practice to which she refers relates only to training about when an officer can remain in a home without consent.

She cites to various evidence in support of her claim. She argues that Powell testified that he was under no obligation to leave her house after she told him to do so. She cites to the testimony of Jerry West ("West"), a member of the Highway Patrol's training staff who

24

was designated by Powell as an expert on tactical arrest issues, and who was responsible for some of Powell's training. Apparently, Coates is attempting to argue that West supports her summary judgment motion by his testimony that: (1) the Highway Patrol Academy trains officers on search and seizure requirements; (2) if he is in a house investigating a complaint like child abuse, he may remain in the house until he knows that everyone is alright and his investigation has been completed; and (3) if he is in a house for an investigation, he must protect himself and the other individuals in the house and may use force if someone is being argumentative. Coates states that this testimony, as confirmed by Powell and Glandon, demonstrates that the Highway Patrol has a policy and practice which led to the violations of Coates's Fourth Amendment rights. Coates argues that Keathley, as Superintendent, has been the approving authority for these Constitution-violating practices and policies and, thus, is liable for the resulting violations.

> The Eighth Circuit has clarified:
>
> A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. A governmental entity cannot be held vicariously liable for its agent's acts under § 1983. Rather, a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover from a governmental entity under § 1983. A governmental policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. A governmental custom involves a pattern of persistent and widespread practices which become so permanent and well settled as to have the effect and force of law.

*Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667 (8th Cir. 2007) (citations and internal punctuation omitted) (finding that a county was not liable via an official capacity suit against its sheriff where the deputy accused of committing a constitutional violation was entitled to

Case 2:08-cv-04158-NKL   Document 80   Filed 07/01/09   Page 25 of 28

qualified immunity). *See also Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (indicating that governmental policy or custom must have played a part in the violation of federal law for a plaintiff to prevail against a state official in a § 1983 action). To prevail at summary judgment on any failure to train theory, Coates must be able to show that Keathley had notice that "the training procedures and supervision were inadequate and likely to result in a constitutional violation." *See Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (finding that a state prison warden and director were entitled to summary judgment on a failure to train claim where the record was void of any facts which would have alerted them that the officers who committed constitutional violations were inadequately trained). Here, as discussed above, the Court cannot find as a matter of law that Powell and Glandon are liable for violating a clearly established constitutional right such that Keathley could be liable for having a policy and custom of allowing violations of that right. Moreover, there is no evidence that Keathley or the Highway Patrol were on notice of prior incidents of constitutional violations like those Coates complains of, or that Highway Patrol training procedures were likely to result in such violations. Coates has not produced evidence of a deliberate choice to allow officers to commit violations like those Coates complains of, nor is there evidence of widespread practices which had the force and effect of law. Therefore, the Court cannot find as a matter of law that Keathley is liable in his official capacity. Coates is not entitled to summary judgment on this issue.

### 3. Fourth Amendment Illegal Seizure

Case 2:08-cv-04158-NKL   Document 80   Filed 07/01/09   Page 26 of 28

Coates argues that she was illegally seized[3] when Powell restrained her on her couch. She states that Powell admitted to restraining her on at least two occasions through physical touching. She also states that Powell admitted he knew that Coates was not an imminent danger to anyone in the house when he restrained her. Coates states that she reasonably believed she was not free to leave her couch. Coates concludes that, at the time of restraining her on her couch, Powell had no reason to believe she had committed a crime, and no probable cause to arrest her. Coates argues that there are no material issues of fact concerning whether she was seized when Powell restrained her.

Powell appears to argue that, because his restraint of Coates was reasonable, she is not entitled to summary judgment on her claim for unlawful seizure based on his restraining her on the couch. He points to his testimony that he was acting in self-defense, as he believed Coates was likely to assault him and that the threat of violence by her was imminent. Powell concedes that it is up to a jury to decide whether Powell's use of force was reasonable. The Court agrees. There remain questions of material fact concerning whether Powell's restraint of Coates on the couch constituted unlawful arrest or seizure. Coates is not entitled to summary judgment on this issue.

## III.    Conclusion

Accordingly, it is hereby ORDERED that

---

[3] Although Coates's pleadings and motion are ambiguous as to whether she seeks to recover for unlawful arrest (as opposed to seizure) based on Powell restraining her on her couch, she states in her reply brief that she claims that the restraint constituted a "seizure" for purposes of her own summary judgment motion.

Case 2:08-cv-04158-NKL    Document 80    Filed 07/01/09    Page 27 of 28

The City of New Franklin and Glandon's motion for summary judgment [Doc. # 44] is GRANTED.

Powell's motion for partial summary judgment [Doc. # 40] is GRANTED as to Coates's claims for trespass, negligent infliction of emotional distress, and constitutional violations concerning remaining in the house; the motion is DENIED as to Coates's claims for intentional infliction of emotional distress and illegal arrest.

Coates's motion for partial summary judgment [Doc. # 57] is DENIED.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: July 1, 2009
Jefferson City, Missouri

Case 2:08-cv-04158-NKL   Document 80   Filed 07/01/09   Page 28 of 28